[No. 12866.   Department Two.   January 15, 1916.]

FRED BARNHART, *Respondent*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Appellant.*[1]

NEGLIGENCE—DANGEROUS PREMISES—THINGS ATTRACTIVE TO CHILDREN—PONDS. Under the tendency to limit, rather than extend, the doctrine of the turntable cases, a pond is not such an agency attractive to children as will probably result in injury to those attracted to it; hence a railroad company is not liable for the death by drowning of a child of tender years attracted to a pond of water impounded on its premises by its grade.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered November 17, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death.   Reversed.

*Geo. W. Korte*, for appellant.

*M. J. McGuinness*, for respondent.

MAIN, J.—The plaintiff brought this action for the purpose of recovering damages for the death of his son, a child eight years of age.   The cause was tried to a jury.   At the conclusion of all the evidence, the defendant challenged the sufficiency thereof, and moved for a directed verdict.   This motion was denied.   The jury returned a verdict for the plaintiff in the sum of $650.   Judgment being entered upon the verdict, the defendant appeals.

The facts briefly stated are:   During the latter part of the year 1911, the appellant railway company was complet-

[1]Reported in 154 Pac. 441.

ing the construction of its branch line from Cedar Falls to Everett. This line passed through the city of Snohomish. Where the line passed through this city it was upon low lands adjacent to the Snohomish river, and a considerable embankment or fill was made upon which the rails and ties were laid. About twelve hundred feet from the west boundary of the city, the railroad grade met a hill which was to the north of the grade. The hill had an elevation of approximately twenty-five feet, upon the side of which grew brush or small trees. The meeting of the grade and the hill at this point left a depression between the two in which either surface water, or flood waters of the river, were impounded and created a pond. The pond was entirely upon the right of way of the railway company. On the bank or hill to the north, there was an old picket fence through which there were a number of openings. Above this hill was what is known as Second avenue. Before the embankment was constructed, the flood waters from the river would at times form a pond in the same vicinity as the pond in question, but a little further south, to which boys would resort for the purposes of play, as they did upon this pond. After the pond in question had been formed, the boys of the neighborhood were accustomed to gather for play, and had constructed a raft out of old railroad ties, or other timbers. The water in the pond was from eight to ten feet deep at the deepest point. In reaching the pond, it was necessary for the boys to go upon and across the private property of the railway company.

On February 3, 1912, the two sons of the respondent, respectively eight and six years old, were upon the raft upon the pond, at play, when the older of the two fell into the water and was drowned. This action, as already indicated, was brought by his father.

It is claimed that the railway company was negligent in failing to drain the pond. The controlling question in the case is whether the owner of the property upon which a pond

is formed, where the boys of the neighborhood resort for play, is guilty of negligence in failing, either to drain the pond, or fence his property against such intrusion. The general rule, of course, is that the private owner of land is not liable to strangers who come thereon without any invitation, express or implied, and receive an injury from some agency upon the premises.

An exception to this general rule is made by what is known as the doctrine of the turntable cases. According to this doctrine, damages may be recovered from the owner for the death or injury of a child of tender years even though technically a trespasser, and who has been attracted to the place of the accident by a dangerous agency which is in the nature of an attractive nuisance. *Railroad Co. v. Stout*, 17 Wall. 657; *Clark v. Northern Pac. R. Co.*, 29 Wash. 139, 69 Pac. 636, 59 L. R. A. 508; *Union Pac. R. Co. v. McDonald*, 152 U. S. 262.

The turntable doctrine has been adopted by the courts of last resort in a considerable number of states, and rejected by almost an equal number. There is a tendency generally on the part of courts which have approved the doctrine to limit, rather than extend, its application. *Harris v. Cowles*, 38 Wash. 331, 80 Pac. 537, 107 Am. St. 847; *Bottum's Adm'r v. Hawks*, 84 Vt. 370, 79 Atl. 858, Ann. Cas. 1913 A. 1025, 35 L. R. A. (N. S.) 440. In the case last cited, will be found a review of the cases which support the statement as to the tendency to limit the doctrine.

The question here presented is not whether the owner of property may be liable, (a) by reason of a trap or pitfall upon his property which may produce the death or injury; (b) a hidden or concealed danger; or (c) a dangerous agency in close proximity or so near a highway that in the use of the highway an accident may occur; but is whether a pond of water is a dangerous agency such as will subject the owner of the property to liability for damages for the death of a child of tender years attracted to the pond for the purpose

of play.   The turntable doctrine makes the owner liable because the dangerous agency was attractive to children of tender years, and in playing about or with such agency, accident or injury would probably result.

That a pond of water is attractive to boys for the purposes of play, swimming, and fishing, no one will deny.   But its being an attractive agency is not sufficient to subject the owner to liability.   It must be an agency such as is likely to, or will probably result in, injury to those attracted to it. That many boys every year lose their lives by drowning is a matter of common knowledge.   But the number of deaths in comparison to the total number of boys that visit ponds, lakes, or streams for purposes of play, swimming, and fishing, is comparatively small.   It would be extending the doctrine too far to hold that a pond of water is an attractive nuisance, and therefore comes within the turntable cases.   There are a number of analogous cases which would support the holding that an owner is not liable for the death of a child drowned in a pond.   But in this case it is not necessary to support the holding by analogous cases when there is ample direct authority upon which it may be rested.   *Emond v. Kimberly-Clark Co.*, 159 Wis. 83, 149 N. W. 760; *Sullivan v. Huidekoper*, 27 App. D. C. 154, 5 L. R. A. (N. S.) 263; *Peters v. Bowman*, 115 Cal. 345, 47 Pac. 113, 598, 56 Am. St. 106; *Thompson v. Illinois Cent. R. Co.*, 105 Miss. 636, 63 South. 185, 47 L. R. A. (N. S.) 1101; *Stendal v. Boyd*, 73 Minn. 53, 75 N. W. 735, 72 Am. St. 597, 42 L. R. A. 288.   Those cases are all from courts that approve the turntable doctrine. In each of them a boy had lost his life by drowning, the youngest of which was four and the oldest eleven years; and in each of them it was held that there was no liability for the death of a child that occurred in an artificial pond.   In the *Peters* case, it was said:

"It is not contended by appellant that the rule of the turntable cases has ever been applied to facts like those in the case at bar; his contention is that the reasoning and philos-

ophy of the rule *ought* to extend it to a case like the one at bar. But the same reasoning does not apply to both sets of cases. A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall."

In the *Sullivan* case, after reviewing the authorities, it was said:

"Without citing other authorities, we are persuaded that the conclusions in the cases cited and the reasoning upon which they are based are correct, and that in a case such as the one at bar it would be unjust to hold the landowner liable for the death of, or injury to, a child of ten years of age. We do not consider that the appellee was negligent in not taking steps to prevent the trespassing upon her land by boys of such age as plaintiff's intestate. To hold landowners responsible under such circumstances would be to impose upon them an oppressive burden, and shift the care of children from their parents to strangers. Every man who has been brought up with the freedom allowed to American boys knows that you might as well try to dam the Nile with bulrushes as to keep boys away from ponds, pools, and other bodies of water."

The case of the *City of Pekin v. McMahon*, 154 Ill. 141, 39 N. E. 484, 45 Am. St. 114, 27 L. R. A. 206, in its reasoning is out of harmony with the cases above cited; and it is the only case, so far as our information goes, which would sustain liability. That case could have been rested upon a different ground and brought within one of the classes in which it is well recognized that liability exists. It is not, however, so rested.

The respondent relies upon the case of *Bjork v. Tacoma,* 76 Wash. 225, 135 Pac. 1005, 48 L. R. A. (N. S.) 331. That case, however, is distinguishable from this. There a child, three years old, was drowned by falling into an opening in a flume which was twenty-four inches square. The flume, other than this particular opening, was covered. This was a dangerous agency which was attractive to children, and in the event a child should fall into the flume, death by drowning was inevitable. It was not of the same nature as a pond where children are accustomed to play, and where comparatively few lose their lives by drowning. In the *Bjork* case, *City of Pekin v. McMahon supra,* was cited as analogous; but in citing that case, it was not the intention of the court to adopt all of the reasoning contained in the opinion. To hold that a pond is an attractive nuisance within the doctrine of the turntable cases would be an extension of that rule beyond its proper limitations.

The judgment will be reversed, and the cause remanded with directions to dismiss.

MORRIS, C. J., BAUSMAN, PARKER, and HOLCOMB, JJ., concur.