(No. 16606.—Judgment reversed.)
AUGUST MINDEMAN, Admr., Defendant in Error, *vs.* THE
SANITARY DISTRICT OF CHICAGO, Plaintiff in Error.

*Opinion filed June 18, 1925.*

NEGLIGENCE—*canal of sanitary district is not in itself an attractive nuisance.* A canal, pond or other open body of water on private property is not in itself an attractive nuisance as that term is used in describing an instrumentality which will render the owner liable for injuries to a child attracted to and injured by it, and there can be no recovery in an action against the Sanitary District of Chicago for the accidental drowning of a boy in the canal where there is no evidence tending to show that the defendant was guilty of any wrongful act which caused the accidental death.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN W. PREIHS, Judge, presiding.

HECTOR A. BROUILLET, (LEROY MILLNER, FRANCIS L. BRINKMAN, and MORTON S. CRESSY, of counsel,) for plaintiff in error.

JOHN G. RIORDAN, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Appellate Court for the First District having granted a certificate of importance, this writ of error is brought to review its judgment affirming a judgment of the superior court in favor of August Mindeman, administrator of the estate of Roy Mindeman, deceased, in his action against the Sanitary District of Chicago, arising out of the accidental drowning of Roy Mindeman, a child five years and ten months old, in the canal of defendant.

The Sanitary District of Chicago is a municipal corporation organized under the laws of this State. In order to take care of the sewage of that part of the city of Chicago

317—34

south of Eighty-seventh street and to provide a navigable waterway from the Calumet river to the main channel in the Sag, defendant had excavated and constructed a canal sixty feet wide and twenty-five feet deep from the main channel eastward to the western limits of the city of Blue Island. On each side of the channel, extending five or six feet above the water, is a perpendicular concrete wall with a flat top four feet wide. On both sides of the canal the banks rise with a gradual incline from the top of the concrete wall ten or twelve feet to the level of the surrounding territory. Beyond the top of this incline is the spoil bank. From the photographs in the record it appears that there is a strip of level ground several feet in width between the foot of the spoil bank and the top of the canal bank. The right of way of the sanitary district is several hundred feet wide at the point in question and is used principally for agricultural purposes. The nearest public highway to the point in question is the junction of John street, which runs parallel with the right of way, and Ogden avenue, which runs south from the right of way to Broadway. It is 300 feet from this corner to the canal bank. For the convenience of the con-tractor constructing the canal a roadway was opened across the right of way north from the termination of Ogden ave-nue. No work had been done at this particular point for about two years and the unfinished banks had caved in, so that there was an incline from the private roadway down to the water's edge. In the excavation beyond the end of the finished canal walls there is a pool of water in which considerable rubbish was floating. In the open field around the unfinished end of this canal the children of the neigh-borhood play. There are no houses on the west side of Ogden avenue between the right of way of the canal and Broadway, which is two blocks south. East of Ogden ave-nue, on John street, there are several houses facing north, and there are houses on both sides of Broadway. Roy Min-deman lived with his parents and three brothers on Broad-

way at Vine avenue, one block east of Ogden avenue. After lunch on the day of the accident he went to the home of a playmate, Irving Rothenberger, a boy eleven years old, who lived about a half-block west of him. After playing at the house a while they got some bottles from the alley south of Broadway and took them to the spoil bank on the south side of the canal. Irving had played around the unfinished end of the canal before but Roy had never been there. After playing with the bottles on the spoil bank they went down to the canal wall, threw the bottles in the canal and began throwing rocks at them. Irving walked up the bank to get some more rocks, and as he turned around he saw Roy disappear over the edge of the wall. He ran down to the canal and saw him struggling in the water about fifteen or twenty feet west of the finished end of the wall. Irving called for help and ran home to tell his mother. Roy's father, who was working a few blocks away, was notified and he ran to the canal. When he arrived there he saw Roy's hat floating on the water about twenty-five feet west of the finished end but did not see Roy. The next day the canal was dragged and the body was recovered from the channel.

The water in the canal is not visible from the public street and it cannot be reached without crossing 300 feet of private property of the sanitary district. It is the contention of plaintiff that defendant permitted children to go upon its property over an open roadway and to play in and about the pool at the unfinished end of the canal, and that this pool, with boards and bottles floating upon it, was attractive to children, and that defendant is liable for the death of the boy in question under the doctrine established in *City of Pekin* v. *McMahon*, 154 Ill. 141. Whether defendant would be liable for the drowning of a child in the unfinished end of the canal need not be decided, for the reason that there is no evidence in this record showing that Roy Mindeman was attracted to the canal by the pool,

wherein were floating the bottles and boards, or that he was drowned in this pool. The evidence is undisputed that he went from the home of his playmate to the spoil bank south of the canal and that he went from there to the wall of the finished canal. The question, therefore, for decision is whether the canal of the sanitary district is what has been called, for want of a better term, an attractive nuisance.

In dealing with a case in which the facts were almost identical with those of the case at bar, the Supreme Court of Kansas in *Somerfield* v. *Land and Power Co.* 93 Kan. 762, 145 Pac. 893, said: "The canal, as will be observed, has the characteristics of a natural stream, and can no more be regarded as an attractive nuisance than would a river flowing through the city or a pond or lake therein. It has been held that an unprotected pool in a natural water-course, to which boys resorted to wade and swim, could not be regarded as an attractive nuisance within the meaning of the 'turntable' cases. (*Tavis* v. *Kansas City,* 89 Kan. 547.) In *Harper* v. *City of Topeka,* 92 Kan. 11, it was ruled that a pond in a city park which was substantially a reproduction of a natural pond, although attractive to children, did not come within the rule of attractive nuisances. There is no greater necessity to build a fence or put a cover over the canal than there would be to fence or cover a natural stream, and there can be little distinction made between them so far as the 'turntable' doctrine is concerned. There might be ground for the contention of appellees, if the appellant had unnecessarily placed or permitted some attractive or dangerous structure to be placed on or over the canal that would imperil the lives of children attracted there to play upon it."

In *Barnhart* v. *Chicago, Milwaukee and St. Paul Railway Co.* 89 Wash. 304, 154 Pac. 441, a boy eight years old was drowned in a pond upon the railroad right of way, and the court, in holding the company free from liability, said: "The question here presented is not whether the owner of

property may be liable:  (*a*) by reason of a trap or pitfall
upon his property which may produce the death or injury;
(*b*) a hidden or concealed danger; or (*c*) a dangerous
agency in close proximity or so near a highway that in the
use of the highway an accident may occur—but is whether
a pond of water is a dangerous agency such as will subject
the owner of the property to liability for damages for the
death of a child of tender years, attracted to the pond for
the purpose of play.  The turntable doctrine makes the
owner liable because the dangerous agency was attractive
to children of tender years, and in playing about or with
such agency accident or injury would probably result.  That
a pond of water is attractive to boys for the purposes of
play, swimming, and fishing no one will deny.  But its be-
ing an attractive agency is not sufficient to subject the owner
to liability.  It must be an agency such as is likely, or will
probably result in injury to those attracted to it.  That
many boys every year lose their lives by drowning is a mat-
ter of common knowledge.  But the number of deaths in
comparison to the total number of boys that visit ponds,
lakes, or streams for purposes of play, swimming, and fish-
ing is comparatively small.  It would be extending the doc-
trine too far to hold that a pond of water is an attractive
nuisance."

.    Without extending this opinion further by quoting from
the many authorities on the subject, it is sufficient to say
that the courts seem to be of one mind in holding that a
canal, a pond, or other open body of water on private prop-
erty, is not of itself an attractive nuisance, as that term is
used in describing an instrumentality which will render the
owner liable for injuries to a child attracted to and injured
by it. (*United Zinc and Chemical Co.* v. *Britt,* 258 U. S.
268, 42 Sup. Ct. 299; *Thompson* v. *Illinois Central Rail-
road Co.* (Miss.) 47 L. R. A.—N. S.—1101; *Emond* v.
*Kimberly-Clark Co.* 159 Wis. 83, 149 N. W. 760; *Stendal*
v. *Boyd,* 73 Minn. 53, 75 N. W. 735; *Wheeling and Lake*

*Erie Railroad Co.* v. *Harvey,* 77 Ohio St. 235, 83 N. E. 66; *Peters* v. *Bowman,* 115 Cal. 345, 47 Pac. 113.) The case of *City of Pekin* v. *McMahon, supra,* is not in conflict with these authorities. In that case this court did not hold that a pond of water was an attractive nuisance, but it held that a pond of water in which floating logs on which children were in the habit of playing were permitted to remain, when maintained near a driveway in a populous city, was under the circumstances such a dangerous instrumentality attractive to children as to render the owner liable for the drowning of a child playing there.

In *McDermott* v. *Burke,* 256 Ill. 401, a boy went upon private property to play in a sand pile and after playing there a while walked over to a place where some workmen were hoisting materials from the first to the second floor of a building under construction. He placed his hand upon the hoisting cable running over a sheave and it was crushed between the cable and the sheave. After discussing at considerable length the liability of one for maintaining an attractive nuisance, the court held that it was a necessary element of the liability that the thing which attracted the child was the thing which caused the injury or brought the child into the situation where it was injured. In this case the spoil bank, which was the thing visible from the public street and the place where the child first came to play, was not dangerous and did not contribute to the injury of the child. The water in the canal, in which the child was drowned, was not visible from the public street and did not attract the boy onto the premises of defendant. As we have said, there is no evidence whatever in the record that this boy was attracted to the canal by the rubbish floating in the pool at the unfinished end of the canal, or that this pool, with its attractive floating objects, contributed in any way to the drowning of the boy. Regretable as this accident is, there is no evidence in this record showing or tending to show that defendant is guilty of any wrongful act which

caused the death of plaintiff's intestate, and the court should have directed a verdict of not guilty. *Austin* v. *Public Service Co.* 299 Ill. 112; *Heimann* v. *Kinnare,* 190 id. 156.

The judgments of the Appellate Court and superior court are reversed.

*Judgment reversed.*