**Harry Baker, Administrator of the Estate of Donald Lee Baker, Deceased, Appellee, v. Fruin-Colnon Contracting Company and Terminal Railroad Association of St. Louis, Appellants.**

Opinion
filed May 29, 1933.

Josiah Whitnel, H. L. Browning and J. R. Mc-Murdo, for appellants.

Beasley & Zulley, for appellee.

Mr. Justice Fulton delivered the opinion of the court.

This is an action on the case brought by appellee, as administrator of the estate of his deceased son, Donald Lee Baker, against appellants, to recover damages for the death of appellee's intestate, arising out of the accidental drowning of Donald Lee Baker, a boy 10 years old, in a pond of water made by appellants in the course of construction of a new union railroad passenger station in East St. Louis, Illinois. The verdict and judgment in the city court was for $2,000 in favor of appellee, and the present appeal is from that judgment.

The declaration consisted of one count and averred substantially that on August 30, 1932, the appellant railroad association of St. Louis was the owner of certain land in the City of East St. Louis, and employed the appellant contracting company to do certain excavating for the purpose of building levees and dikes around said land so that the space between said levees and dikes could be filled with sand, which was to be pumped from the Mississippi river; that the appellants, for the purpose of making such excavation, had in use divers large machines and employees, and on said date were engaged in digging and excavating, and had, shortly prior thereto, dug certain deep holes in the neighborhood of where the plaintiff lived; that said holes had become filled with water; that the dirt taken

from said holes had been piled up so as to form high embankments and were open and easy of access to anyone, and that appellants permitted said deep holes, so filled with water, to remain open and exposed to the children in that neighborhood, which was thickly populated; that on said date, and for a considerable time prior thereto, children were permitted and allowed by the appellants to play upon said embankment and to wade in the water in said holes; that the water in some of the holes was from 12 to 15 feet in depth and that said embankments and holes so filled with water and pieces of boards, sticks and chunks floating on the water in said holes were unusually interesting and attractive to children in said neighborhood, including appellee's intestate, and that while the children in the neighborhood, including appellee's intestate, who was an infant 10 years of age, were wading in the water in said holes and playing with said boards, sticks and chunks floating on the water in said holes, and on account of the tender age of appellee's intestate, he was unable to appreciate the danger, and did step into one of said holes where the water was 10 feet deep and was thereby drowned.

It was further averred that appellee's intestate was in the exercise of due care and caution and the names and ages of the next of kin were set forth. General issue was filed by both the appellants and four special pleas were filed by each appellant upon which issues were joined.

While appellants have assigned numerous errors, it is our judgment that the main question is whether or not, as a matter of law, the pond of water in this case constituted an attractive nuisance. This question was raised by appellants on a motion to direct a verdict at the close of the appellee's evidence and renewed again at the close of all the evidence, both of which were denied.

The evidence shows that the Terminal Railroad Association of St. Louis planned to build a new union station in East St. Louis, and for that purpose acquired property, bounded by Railroad avenue on the north, Main street on the east, Converse avenue on the south and Cahokia creek on the west, all in said city. In pursuance of this plan, the Terminal Railroad Association on May 12, 1932, entered into a contract with Fruin-Colnon Contracting Company for the construction of a sandfill, which would elevate the ground at the station site above the level of the surrounding ground. The site of the station is a short distance from the business district of East St. Louis. At the north of the bounded area is the plant of the International Harvester Company, to the east is a residence section of the city, to the south is the plant of the Elliot Frog & Switch Company, and to the west is Cahokia creek. On August 18, 1932, a dredging company began to throw up an embankment around the site where the fill was to be constructed according to the plan outlined in appellee's declaration. A steam shovel scooped up the dirt and lifted it in place to form the embankment leaving deep holes or a trench in the ground. The embankment averaged about 15 feet in height above the level of the ground. Main street on the east was the only street that adjoined the site and the east embankment was about 400 feet distant from main street at its nearest point. On August 24, 1932, the dredging company began to pump sand and water in from the Mississippi river for the purpose of filling in with sand the space between the embankments. The water was ponded, so that the sand pumped in from the river would settle, and after the sand had settled the water was permitted to run off through Cahokia creek to the river. The distance between the embankments from east to west in the vicinity of where the drowning occurred was about 150 feet. All the streets

and alleys in the described area had been vacated and there were no buildings in said area except the factory of the International Harvester Company. The general topography of the land east of the east embankment was flat and it was impossible to see over the embankment from the vicinity of Main street. There was no fence or warning sign placed on or around the embankments. There was evidence that children were at different times seen playing on the embankment and also swimming or wading in the pond.

Donald Lee Baker lived with his parents on an alley running east and west between Railroad and Brady avenues, and about 100 feet east of Main street. On the morning of August 30, 1932, the Baker boy and other children had been playing in the vicinity. Before dinner they talked about going swimming and decided to go to Jones park or Franklin park, where public pools were located. After dinner the boys met at Donald Baker's house. Donald and some of the other boys wore bathing suits. The boys told Donald's mother they were going to Franklin park. While leaving the home they learned from another boy that the Franklin park pool was closed, and so they all decided to go over to the pond hereinabove described. The boys proceeded westwardly across Main street and on to the easterly embankment. They climbed this embankment and walked along the top of it northerly and westerly and then southerly along the western embankment and then down to the water. The evidence shows that the water was deep near the easterly embankment and the reason the boys did not go in the water there was because they could not swim. Donald Lee Baker was not able to swim and only one boy, Walter Johnson, could swim. The deceased asked Walter Johnson to teach him to swim. The boys had been there about two hours before the drowning oc-

curred. For about an hour Walter Johnson had been teaching Donald how to swim and then they got out into deep water and Donald was drowned.

There is seemingly a conflict in the decisions on the question as to when a nuisance is so attractive to children of tender years as to come within the doctrine requiring a private owner of land to respond in damages for the death of a child occurring upon his premises where he had left unguarded or exposed some dangerous attraction which causes the injury. In one of the late cases our Supreme Court said: "Without extending this opinion further by quoting from the many authorities on the subject, it is sufficient to say that the courts seem to be of one mind in holding that a canal, a pond, or other open body of water on private property, is not of itself an attractive nuisance, as that term is used in describing an instrumentality which will render the owner liable for injuries to a child attracted to and injured by it (citing cases from foreign jurisdictions). The case of *City of Pekin v. McMahon, supra,* is not in conflict with these authorities. In that case this court did not hold that a pond of water was an attractive nuisance, but it held that a pond of water in which floating logs on which children were in the habit of playing were permitted to remain, when maintained near a driveway in a populous city, was under the circumstances such a dangerous instrumentality attractive to children as to render the owner liable for the drowning of a child playing there." *Mindeman v. Sanitary District,* 317 Ill. 529.

It is the contention of appellee that appellants permitted children to play upon the embankments and to go swimming in the pond, and that in the water were boards, chunks and pieces of wood with which the children played, making the pond attractive to children, and that appellants were liable for the death of the boy in question under the principle established in *City of Pekin v. McMahon,* 154 Ill. 141. This case

can be distinguished from that holding in two essential particulars, first, because it did not adjoin a public thoroughfare and second because there is no evidence that appellee's intestate was attracted to the pond because of any boards, sticks or other floating objects. In the *Mindeman* case the court further said: "That a pond of water is attractive to boys for the purposes of play, swimming, and fishing no one will deny. But its being an attractive agency is not sufficient to subject the owner to liability. It must be an agency such as is likely, or will probably result in injury to those attracted to it. That many boys every year lose their lives by drowning is a matter of common knowledge. But the number of deaths in comparison to the total number of boys that visit ponds, lakes or streams for purposes of play, swimming, and fishing is comparatively small. It would be extending the doctrine too far to hold that a pond of water is an attractive nuisance." That case cites many similar cases from foreign jurisdictions, with approval holding substantially the same doctrine.

This court was called upon to pass upon a similar case in *Kelley v. First Bank & Trust Co.,* 256 Ill. App. 439, and affirmed the sustaining of a demurrer to a declaration which set up a somewhat similar state of facts to those disclosed by this record. Under the laws of Illinois we do not believe the pond of water in which the Baker boy was drowned, as shown by the evidence in this case, constituted an attractive nuisance and the court erred in not granting the motion to direct a verdict for the appellants at the close of appellee's testimony. The judgment is therefore reversed with a finding of facts.

*Reversed with a finding of facts.*

The clerk will insert in the judgment the following: "The court finds that the death of plaintiff's intestate was not caused by any negligent act of appellants."