McCLEOD, Respondent, v. TRI-STATE MILLING CO.,
a Corporation, Appellant

(24 N. W.2d 485)

(File No. 8784. Opinion filed October 21, 1946.)

**H. F. Fellows,** of Rapid City, for Plaintiff and Respondent.

**Harold R. Hanley** and **Whiting & Wilson,** all of Rapid City for Defendant and Appellant.

ROBERTS, J. This is an action brought by John M. McCleod as special administrator against the Tri-State Milling Company to recover damages for the death of his son John, four years of age, who was drowned on June 4, 1943, in a canal maintained by the defendant.

There is no substantial conflict in the evidence. From the record, it appears that an ordinance known in the record as "Exhibit 1" was enacted in August, 1889, by the city council of Rapid City granting to the Rapid River Milling Company the right to excavate a canal across and along the streets therein named. It requires that the canal "be boxed in a good workmanlike and thorough manner" and that the company keep the "alleys and streets that said ditch or canal crosses or traverses in good condition so that travel or the use" of such alleys and streets be not impeded. It also provides that the company is "responsible for damages occasioned or caused by said ditch or canal" and if the company fails "to keep such ditch or canal in reasonable or proper repairs, after ten days written notice having been given to said company by the city council of the city of Rapid City," then the ordinance becomes null and void. The canal enters St. Louis street between Seventh and Eighth streets and extends through St. Louis street in an easterly direction to Fourth street. The portion of St. Louis street outside of that occupied by the canal is open to travel. The canal as originally constructed was covered throughout its length, but in a few years the timbers with which the canal was boxed decayed and the cover entirely disappeared. The defendant Tri-State Milling Company acquired the mill and plant of the Rapid River Milling Company in 1934 and shortly thereafter constructed along the banks of the canal a fence made of woven wire, 38 inches high, iron posts set in concrete and two strands of barbed wire above the woven wire.

The McCleod residence is on St. Louis street between

Sixth and Seventh streets, facing the south bank of the canal. There were three openings under the fence along the south bank, making it possible for children to crawl under the fence. No one saw the boy enter the enclosure, and the only evidence tending to show by what route he reached the canal is that of the mother who testified that a toy with which the boy was playing earlier in the day was found on the bank of the canal near one of the openings under the fence. There was evidence that small children were accustomed to play along the south fence to the knowledge of officers of the defendant company.

The allegations of negligence as set forth in the complaint upon which the case was tried are that "defendant, negligently and in violation of the ordinances of the City operated and maintained along and upon St. Louis Street in the City of Rapid City, South Dakota, between Sixth and Seventh Streets, an open and uncovered ditch or canal filled with deep water which the corporation then knew, or should have known was attractive and dangerous to children of tender years." Defendant answered admitting that plaintiff's son was drowned, but denied that the canal was negligently maintained or that the death of the child was caused by the negligence of the defendant. The jury returned a verdict in favor of the plaintiff for $4,250 and defendant whose motion for judgment notwithstanding the verdict or for a new trial was denied has appealed.

The main question for our consideration is whether a violation of this so-called ordinance creates a civil right of action in a party injured thereby. The trial court instructed the jury that if the jury should find from the evidence "that the defendant corporation violated City Ordinance No. 66 of the city of Rapid City, South Dakota, in that it failed to keep and maintain the ditch or canal in which the child John Mc-Cleod was drowned, covered and boxed as required by said ordinance, and that such violation directly and proximately caused said death, or was a direct and proximate contributing cause thereof," then its verdict should be in favor of plaintiff and that "this is so for the reason that any person who violates such a city ordinance is negligent as a matter of law,

if such violation causes or contributes to such accident or death." Defendant claims that if Exhibit 1 is an ordinance as distinguished from a mere permit or license by the city to a private corporation to occupy or use portions of public streets for the construction of a canal a violation thereof does not result in liability as stated by the court in its instruction.

■■■■ The question frequently arises in actions for negligence whether a liability may be predicated on the violation of a statute or ordinance, or as to whether the violation constitutes negligence as a matter of law, where such enactment may regulate the performance of an existing duty or where no common-law duty existed independent of the statute or ordinance. The rule as to the violation of a statutory duty as declared in this state is that if such violation is the proximate cause of an injury to a person for whose protection the statute was enacted it constitutes negligence as a matter of law unless under certain circumstances it is excusable or justifiable. Zeller v. Pikovsky, 66 S. D. 71, 278 N. W. 174. There is a diversity of judicial opinion as to the effect of ordinances in determining liability for negligence. 38 Am. Jur., Negligence, § 168. Decisions in this state have approved the submission of ordinances in connection with other evidence to the jury for consideration. Merrill v. Minneapolis & St. L. Ry. Co., 27 S. D. 1, 129 N. W. 468; Whaley v. Vidal, 27 S. D. 627, 132 N. W. 242; Sioux Falls Traction System v. Great Northern Ry Co., 39 S. D. 17, 162 N. W. 740; Cameron v. Miller, 43 S. D. 429, 180 N. W. 71. It was not necesasry therein to determine whether the violation of an ordinance is negligence per se. An ordinance authorized and duly enacted within the municipal power has the same local effect as a statute. City of Huron v. Campbell, 3 S. D. 309, 53 N. W. 182. With respect to the conclusive effect of statutes and ordinances there is no good reason for a distinction. The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur. The

statute or ordinance becomes the standard of care or the rule of the ordinarily careful and prudent person.

 A municipal corporation is charged with the duty of keeping its streets and sidewalks in a reasonably safe condition. Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315; Smith v. City of Yankton, 23 S. D. 352, 121 N. W. 848; Gellenbeck v. City of Mobridge, 40 S. D. 157, 166 N. W. 631; Norberg v. Hagna, 46 S. D. 568, 195 N. W. 438, 439, 29 A. L. R. 841; Hermandson v. City of Canton, 60 S. D. 367, 244 N. W. 525; Fenton v. Ackerman, 66 S. D. 465, 285 N. W. 516. Defendant viewing the ordinance as having the effect of a contract between the city and the company determining between them the obligation of keeping the canal in repair contends that no right of action accrued by its breach for the reason that the ordinance imposing upon the company performance of a part of the duty of the city to the public was intended for the benefit of the city or the public at large and not for the benefit or protection of individuals. In determining whether there has been such violation of a legislative enactment as may constitute negligence regard must be had to the purpose of the enactment. The failure as we have stated to observe the requirements of an ordinance enacted for the benefit of individuals will sustain an action for negligence, provided other elements of negligence concur. Bott v. Pratt, 33 Minn. 323, 23 N. W. 237, 53 Am. Rep. 47; Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S. W. 648, 5 L. R. A., N. S., 186; Hayes v. Michigan. Cent. R. Co., 111 U. S. 228, 4 S. Ct. 369, 28 L. Ed. 410; see Annotations in 5 L. R. A., N. S., 186 and 132 A. L. R. 871. Where the provisions of an ordinance impose duties not for the benefit of individuals comprising the public, but for the benefit of the municipality or the public considered as an entity, no right of action arises in one injured by reason of noncompliance. Taylor v. L. S. & M. S. R. Co., 45 Mich. 74, 7 N. W. 728, 40 Am. Rep. 457; Heeney v. Sprague, 11 R. I. 456, 23 Am. Rep. 502; Flynn v. Canton Co., 40 Md. 312, 17 Am. Rep. 603; Hay v. City of Baraboo, 127 Wis. 1, 105 N. W. 654, 3 L. R. A., N. S., 84, 115 Am. St. Rep. 977; Frontier Steam Laundry Co. v. Connolly, 72 Neb. 767, 101 N. W. 995, 68 L. R. A. 425, Restatment of the Law of Torts, § 288.

"The nature of the duty," said the court in Taylor v. L. S. & M. S. R. Co., supra [45 Mich. 74, 7 N. W. 729], "and the benefits to be accomplished through its performance must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit."

■■ The ordinance granted to the milling company permission to excavate and maintain the canal along and across streets and alleys of the city upon condition that the company keep such streets and alleys in repair. While the duty to keep streets in repair is imposed by law upon a city, it is the settled law that where a person in consideration of a license or other advantage agrees to perform a duty, such as the repair of a street used by it, he is liable to a person injured by reason of nonperformance. The general rule deducted from a number of decisions referred to in an annotation in Ann. Cas. 1913C, 217 is thus expressed: "A person required by contract, franchise, municipal ordinance, or statute to perform the duty resting on the municipality of keeping its streets in repair and safe for the passage of the public, is liable to a party injured by a defect in a street caused by the failure to perform such duty." To the same effect is the statement of the rule in the Restatement of the Law of Torts, § 288(c). This principle is ordinarily recognized and applied in cases where public service companies have assumed the duty of keeping in repair portions of the streets used by them in consideration of franchises granted. The duty is considered as having been imposed for the benefit of individuals comprising the public. We think that there can be no logical distinction drawn with respect to the nature of the duty imposed between such cases and the one under consideration. But counsel contend that there is no common-law duty of safe-guarding young children against injury, except to afford such protection as is contemplated within the ordinary obligation to keep streets in a reasonably safe condition and that the ordinance should not be construed in any event as requiring more than ordinary care and conferring a right of action against the defendant not enforceable against the city. It may be assumed that there was no common-law duty either on the part of the city

or the milling company, for the protection of young children, to cover the canal. The ordinance, however, established a standard of care to be used by the milling company in return for the privilege of using the streets and alleys and its validity is not questioned. If the company has assumed a possibly higher degree of care for the protection of persons and property than that existing under the common law, we see no reason why it should not be held to such standard of care. Metcalf v. Mellen, 57 Utah 44, 192 P. 676; Karle v. Reid, 1 Cal. App. 2d 144, 36 P.2d 150, 37 P.2d 694.

Counsel for plaintiff contends that the facts of this case come within the attractive nuisance doctrine and that independently of the ordinance defendant was liable for the death of the child. The complaint alleges that the uncovered canal is dangerous and attractive to children of tender years and the court instructed the jury that if any one maintains on his premises something that is an attraction or an allurement to children of tender years, the law imposes upon him the duty to take reasonable precautions to prevent their intrusion.

In Baxter v. Park, 44 S. D. 360, 184 N. W. 198, Id., 48 S. D. 506, 205 N. W. 75, an action by a parent for the death of a child caused by the cave in of a wall of a gravel pit in which the child was playing, this court recognized the doctrine laid down in Sioux City & Pacific R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, commonly known and referred to as the "Turntable Case." This court held that such doctrine rests upon the broad principle that the attractiveness of a dangerous article or structure to children of tender years is to be construed as an implied invitation, which excepts them from the category of trespassers, and that an owner "who places dangerous articles or structures upon his own premises, so situated that children of tender years, unconscious of danger, and led merely by childish curiosity and impulse, and who, living in proximity to such premises, may have easy access thereto, owes to such children the duty to take precautions such as may be reasonable under the particular circumstances to avoid danger to them which he knows, or may be reasonably expected to know, may exist

because of the character of the article or structure and its location and immediate surroundings."

The question as to the applicability of the doctrine of attractive nuisance to ponds and waterways was considered by this court in Morris v. City of Britton, 66 S. D. 121, 279 N. W. 531, 532. The following statement from 20 R. C. L. 96 was approvingly recognized and quoted: "Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of the tenderest years; and as a general proposition no liability attaches to the proprietor by reason of death resulting therefrom to children who have come upon the land to bathe, skate, or play. * * * Although, a property owner may know of the habit of children to visit waters upon his premises, he is as a rule under no obligation to erect barriers or take other measures to prevent them being injured thereby.' " And in denying plaintiff's right to recovery, this court in that case said: "Once a court decrees liability for injury occasioned to a child in an unguarded pool or pond, it would be difficult to place any practical limitation upon such liability." This rule finds good expression in the case of Thompson v. Illinois Central Railroad Co., 105 Miss. 636, 63 So. 185, 186, 47 L .R. A., S. N., 1101, wherein the court said: " 'Scattered over the length and breadth of the land are innumerable ponds and lakes, artificial and natural; and occasionally a boy or man loses his life while wading, or bathing, in such body of water. If, as a matter of law, the owners of fish ponds, mill ponds, gin ponds, and other artificial bodies, wherein it is possible that boys may be drowned, can be held guilty of actionable negligence unless they inclose or guard same, few will be able to maintain these utilities, and to our minds an intolerable condition will be created.' "

In Somerfield v. Land & Power Co., 93 Kan. 762, 145 P. 893, 894, it was held that the defendant company maintaining for commercial purposes through a populous city an unguarded canal with precipitous banks was not liable for the drowning of a child therein. The court said: "The canal, as will be observed, has the characteristics of a natural stream, and can no more be regarded as an attractive nuis-

ance than would a river flowing through the city or a pond or lake therein. It has been held that an unprotected pool in a natural water course, to which boys resorted to wade and swim, could not be regarded as an attractive nuisance within the meaning of the 'turntable' cases. Tavis v. Kansas City, 89 Kan. 547, 132 P. 185. In Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, 51 L. R. A., N. S., 1032, it was ruled that a pond in a city park which was substantially a reproduction of a natural pond, although attractive to children, did not come within the rule of attractive nuisances. There is no greater necessity to build a fence or put a cover over the canal than there would be to fence or cover a natural stream, and there can be little distinction made between them so far as the 'turntable' doctrine is concerned. There might be ground for the contention of appellees if the appellant had unnecessarily placed or permitted some attractive or dangerous structure to be placed on or over the canal that would imperil the lives of children attracted there to play upon it. * * * The court does not feel warranted in extending the doctrine so as to make appellant liable for failing to fence or guard a water course like the one in question and which, so far as the 'turntable' rule is concerned, corresponds with a natural stream."

Also, in McCabe v. American Woolen Co., 1 Cir., 124 F. 283, 287, the defendant company was held not liable for the death of a child who fell into an open canal and was drowned. The company maintained an unguarded canal with precipitous banks through the thickly settled portion of a town and near the home of the father of the child who was drowned. While recognizing the doctrine laid down by the Supreme Court in Sioux City & Pacific R. Co. v. Stout, supra, the court said: "The case at the bar, however, is essentially distinct in this particular. This canal was permanent, open, and plain to view, as much so as though it had been a natural stream, and suggests nothing whatever which would change the relations of the parties from what they would have been had it been a brook or a river. If the defendant is to be holden to this plaintiff for not especially guarding it, then the customs of the community must be changed throughout, because it is impossible to

distinguish this canal for the purpose of this case, from a river or a brook, a haymow, an ox cart left in a farmer's yard, a high ledge, or a field trench, about either of which children may happen to be accustomed to play. We think, therefore, that this canal was an object of such a character that, both from the reason of the thing and the customs of the community, the defendant was entitled to asume that the plaintiff's natural guardians would protect him from any dangers attached thereto, as they easily could and ought to have done."

Emond v. Kimberly-Clark Co., 159 Wis. 83, 149 N. W. 760, 761, was an action to recover damages for the drowning of plaintiff's son, four years of age. Plaintiff alleged that the defendant had constructed a dam in close proximity to a village main street, causing a pool of water to be formed; that defendant had also constructed an overflow gate in such a manner that it was peculiarly attractive and alluring to children of tender years; and that defendant was negligent in failing to fence or barricade the pond. The trial court sustained a demurrer to the complaint. It was there said: "Heretofore it has been the judgment of this court that, in the absence of special danger or peculiar circumstances, there is no breach of duty to the public in leaving unfenced a pond of water located on private property. The attractiveness of the water or its nearness to a public highway does not take it out of the rule. Klix v. Nieman, 68 Wis. 271, 32 N. W. 223, 60 Am. Rep. 854. The conclusion reached in that case is adhered to. * * * Here we have nothing but a body of water in an ordinary state, such as it· is often left in by nature, and, though attractive to children, there was no duty to fence it."

To the same effect are the following decisions denying liability for death or injury to children by reason of open and unguarded canals, ponds and excavations. Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, 72 Am. St. Rep. 597; Peters v. Bowman, 115 Cal. 345, 47 P. 113, 598, 56 Am. St. Rep. 106; Moran v. Pullman Palace Car Co., 134 Mo. 641, 36 S. W. 659, 33 L. R. A. 755, 56 Am. St. Rep. 543; Cooper v. Overton, 102 Tenn. 211, 52 S. W. 183, 45 L. R. A.

591, 73 Am. St. Rep. 864; Sullivan v. Huidekoper, 27 App. D. C. 154, 7 Ann. Cas. 196, 5 L. R. A., N. S., 263; Blough v. Chicago Great Western Ry. Co., 189 Iowa 1256, 179 N. W. 840; Salladay v. Old Dominion Copper Mining & Smelting Co., 12 Ariz. 124, 100 P. 441; Richards v. Connell, 45 Neb. 467, 63 N. W. 915; Riggle v. Lens, 71 Or. 125, 142 P. 346, L. R. A. 1915A, 150 Ann. Cas. 1916C, 1083; Barnhart v. Chicago M. & St. P. R. Co., 89 Wash. 304, 154 P. 441, L. R. A. 1916D, 443; Mindeman v. Sanitary Dist. of Chicago, 317 Ill. 529, 148 N. E. 304; Charvoz v. Salt Lake City, 42 Utah 455, 131 P. 901, 45 L. R. A., N. S., 652; see, also, Melendez v. City of Los Angeles, 8 Cal. 2d 741, 68 P.2d 971, 2 N. C. C. A., N. S., 706.

▆▆ Waters, whether natural or artificial stream, have an allurement for children, but this is not sufficient of itself to subject an owner to liability. We think the facts of this case did not justify the court submitting the case to the jury under the attractive nuisance doctrine. It would be extending the doctrine too far, as this court indicated in the Britton case, to hold that a natural or artificial stream is an attractive nuisance. We, however, do not determine whether the error in submitting the case to the jury on the theory of attractive nuisance was prejudicial in view of the conclusion reached on the effect of the violation of the ordinance. The judgment is reversed on another ground, but what we have said about the attractive nuisance doctrine will prevent a repetition of the error in the event of a retrial.

The court in substance instructed the jury that if they found that death of the child resulted because of the negligence of the defendant as alleged then plaintiff was entitled to recover such amount as "the jury may deem from the evidence is just and fair compensation, not exceeding the sum of ten thousand dollars," the maximum amount recoverable under the wrongful death statute. The court further instructed the jury as follows:

"Every parent has the right to expect and to anticipate that in his old age his or her child will, if necessary, contribute to his or her support; and it is the moral and legal duty of every child, whether a minor or an adult, to do so.

The probability and expectancy of contributions by the child to the parents may be inferred by the jury from such moral and legal duty and from the relationship.

"The measure of plaintiff's right to recover is the pecuniary damage which the parents have sustained. The jury in estimating the damages should not take into account or consider the sorrow, mental anguish or pain which the parents may have suffered by reason of the loss of their child. The damage is exclusively for a pecuniary loss. In measuring this it is not limited to the benefit received prior to the death, but it shall embrace all the probable or even possible pecuniary benefits which might accrue during the childs' life. Among these is the probable or possible direct benefits from earnings during the child's minority and also after the child would have reached his majority; and also the child's advice during life, and the prospect of inheriting from the child after death. It matters not whether the parents at the time of the child's death were dependent upon him for support, nor does it matter whether the child had ever contributed anything to the support of the parents."

 The statute (SDC 37.22) under which this action was brought, allowing damages for "pecuniary injury," contemplates recovery for those prospective advantages of a monetary nature which have been cut off by premature death. Tobin v. Bruce, 39 S. D. 64, 162 N. W. 933; Bottum v. Kamen, 43 S. D. 498, 180 N. W. 948. There can be no exact rule for determining damages for the death of a child too young to have demonstrated an earning capacity. The majority of courts in jurisdictions having like or similar statutes hold that the physical and mental characteristics, such as the sex, age and state of health of the deceased minor and the position in life of the parents are factors which may be considered by a jury in determining whether substantial damages may be awarded. Skeels v. Davidson, 18 Wash. 2d 358, 139 P.2d 301, 149 A. L. R. 234. The verdict of the jury must, however, be predicated upon the facts and circumstances appearing in the case and accord with reasonable probabilities. The court instructed the jury that expectations of benefits to the parents "embrace all the

probable or even possible pecurniary benefits which might accrue during the child's life" and that the jury could thus take into consideration the expectancy of the son's advice during life and the prospects of inheritance from him after death. In Tufty v. Sioux Transit Co., 69 S. D. 368, 10 N. W.2d 767, 768, the instruction objected to included similar language. Concerning such instruction, this court said: "It might be that under the rule announced in the case of Tobin v. Bruce et al., 39 S. D. 64, 162 N. W. 933, and approved in the Bottum-Kamen case, mere expectancy of support from a child on the part of a parent is sufficient upon which to predicate the action and sustain nominal damages, but to sustain a verdict for substantial damages, we believe that such verdict must be based upon a reasonable expectation of benefits as disclosed by all of the circumstances of the case, a mere possibility of benefits is not sufficient. This court has taken the liberal view and held that the earnings or probable contributions of a child beyond minority may properly be considered in an action for wrongful death, as opposed to the limited rule in some states that the damages recoverable by a parent for the death of his minor child are limited to compensation for loss of earnings and services of the child during the period of his minority, and that damages for the loss of benefits which the parent might have received from a child after he attained his majority, had he lived, are too speculative and therefore not recoverable. To further extend our present rule to include any possible benefit, and have that benefit bear no relation to the benefit which might reasonably be expected under all the facts and circumstances of the case, would be placing the whole matter in the discretion of the jury without stint or limit. While under our present rule there is no mathematical rule or formula by which damages in this class of cases should be computed, yet those damages should bear some relation to the benefit which, as shown by the record, might reasonably be expected."

We therein expressly disapproved of the language quoted in Bottum v. Kamen, supra, from the New York case of Morris v. Metropolitan St. Ry. Co., 51 App. Div. 512, 64

N. Y. S. 878. The instruction now before us includes much of the language referred to.

In sustaining the court's refusal to give an instruction authorizing the jury to consider future advice and the prospects of inheritance, in Hodkinson v. Parker, 70 S. D. 272, 16 N. W.2d 924, decided since the trial of the instant case, we again pointed out that proof of a possibility never can suffice to establish a factual conclusion and held that the requested instruction dealt with mere possibilities and was properly refused.

We conclude that the giving of this instruction was prejudicial error. The judgment appealed from is reversed.

All the Judges concur.

PUCKETT, Circuit Judge, sitting for POLLEY, J.