(No. 32500.—

GUST GUSTAFSON, Admr., Appellee, *vs.* CONSUMERS SALES AGENCY, INC., Appellant.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

WINSTEIN & RIMMERMAN, of Rock Island, (STEPHEN C. MILLER, of counsel,) for appellant.

McDONALD & McCRACKEN, of Moline, (ELLIOTT R. McDONALD, CARL W. SCHULTZ, and DAN H. McNEAL, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff, Gust Gustafson, as administrator of the estate of Calvin Keith Gustafson, deceased, instituted suit for damages against defendant, Consumers Sales Agency, Inc., for the wrongful death of plaintiff's intestate as a result of

an alleged attractive nuisance maintained on defendant's premises. The circuit court of Rock Island County entered judgment on the jury verdict in favor of plaintiff in the amount of $5000, and the Appellate Court reversed that judgment on the ground that the complaint failed to specifically allege the names of decedent's next of kin and that they suffered pecuniary damages. This court has allowed plaintiff's petition for leave to appeal.

The salient issue presented by this appeal is whether the defects of the complaint, interposed for the first time on review, constituted reversible error. A secondary issue, urged by defendants, but not considered in the Appellate Court's opinion, is the sufficiency of the evidence to establish an attractive nuisance.

The complaint, as amended, alleged in substance that plaintiff is the duly appointed administrator of the estate of Calvin Keith Gustafson, deceased; that defendant owned certain premises which it negligently failed to grade so that water was permitted to collect in the ravines thereon to a depth of some fifteen feet in certain portions; that there were sticks, logs and other objects afloat and frozen in this artificial watercourse, which was open and unguarded even though located adjacent to public streets and in close proximity to thickly populated districts; that this watercourse constituted an attractive nuisance to children of tender years who would be attracted to the situs and liable to fall into the water; that defendant knew long prior to January 14, 1950, or by the exercise of ordinary care could have known that children played there; that plaintiff's intestate, a child of seven, lived near these premises, and was attracted to such floating objects in the open and unguarded watercourse, and while at play thereon at 4:45 P.M., January 14, 1950, and as a direct result of defendant's negligence in maintaining the attractive nuisance, plaintiff's intestate unavoidably fell into the water and was drowned; that as a consequence of defendant's negligence

which caused the death of said Calvin Keith Gustafson, plaintiff suffered damages in the amount of $15,000.

The evidence adduced at the trial revealed that on January 14, 1950, Calvin Keith Gustafson, age seven, together with two friends aged five and six, went to the pond on defendant's premises. One of the children, Billy Roberts, testified that he and Calvin slid on the ice and that Calvin fell in a hole in the pond. Billy ran home to tell his mother, and she testified that after the boy pointed out the hole in the ice to her, they went to notify Calvin's mother. She further stated that the Gustafson's have only one other child, a boy named Wayne, age twelve.

When Mrs. Gustafson saw the hole in the ice she knew the child was down there, and three members of the fire department, who were summoned, put a 28-foot ladder on the ice to support one of the firemen while he probed for the body with a pole. After probing some twenty minutes they recovered the body of the boy who was pronounced dead on arrival at the hospital.

Mrs. Gustafson testified that she was the mother of the deceased child, that her husband's name was Gust, and that they had only one other child, Wayne, age twelve.

A fourteen-year-old boy testified that he had been sliding on the pond about two weeks before, and also had seen other boys and girls sliding there just two days before the accident, when the ice was wet and partly melted. Another child and her mother testified that the child had been sliding on the pond and fell into water up to her waist some two weeks before this accident. The mother, not knowing who owned the property, notified the police of the occurrence. One of defendant's officials denied any knowledge of children sliding on the pond, although subsequently he admitted chasing children off the property several times, despite the fact that a no-trespassing sign was posted.

Evidence was further adduced that the pond was clearly visible from the back yard of one of the children with

whom the deceased customarily played, and that the watercourse was completely filled in two months after the accident, although deemed *too* expensive a project when contemplated some time prior to the accident. Plaintiff's exhibits of the pond, introduced in evidence, revealed that it was partially frozen and contained numerous floating objects, including a five-gallon drum.

On the basis of the foregoing facts, the jury returned a verdict for plaintiff in the amount of $5000. The court entered judgment on that verdict, and denied defendant's motion for judgment notwithstanding the verdict, which was directed to the sufficiency of the evidence to establish an attractive nuisance.

On appeal therefrom, defendant urged as grounds for reversal plaintiff's failure to allege the names and number of the decedent's next of kin, or that they suffered pecuniary loss, and the Appellate Court held that such omissions constituted reversible error.

In adjudging whether this pleading contained a sufficient allegation of the elements necessary to assert a right to recover under the Wrongful Death Act (Ill. Rev. Stat. 1951, chap. 70, pars. 1 and 2,) it is incumbent upon this court to construe that act together with the provisions of the Civil Practice Act, and other applicable procedural statutes and concepts. *Metropolitan Trust Co.* v. *Bowman Dairy Co.* 369 Ill. 222.

Under the Wrongful Death Act, it has been held that it is necessary to allege that decedent had next of kin and that they suffered pecuniary damages. (*North Pier Terminal Co.* v. *Hoskins Coal and Dock Corp.* 402 Ill. 192; *Wilcox* v. *Bierd,* 330 Ill. 571; *Foster* v. *St. Luke's Hospital,* 191 Ill. 94.) It is uncontroverted, however, that the complaint herein contains several references to plaintiff's intestate. The decedent, a seven-year-old child, is referred to throughout the complaint as plaintiff's intestate, and it appears that the plaintiff administrator has the same last

name as his intestate. The names and relationship of the next of kin are not contained in the complaint.

We cannot agree with the statement of the Appellate Court, however, that the sufficiency of the complaint was questioned in the trial court by the motion for judgment notwithstanding the verdict, for such objections must be made specifically under section 45 of the Civil Practice Act, (Ill. Rev. Stat. 1951, chap. 110, par. 169,) and in none of defendant's motions is there any reference to the omissions of this allegation in the complaint. On the contrary, from the record it appears that defendant apparently assumed that the complaint was sufficient in this respect, since in paragraph 4 of its motion for judgment notwithstanding the verdict defendant refers to "those benefitting by the action," and in paragraph twelve of said motion defendant refers to the necessity of proof of due care on the part of plaintiff, and the "brother of the decedent." Moreover, as hereinbefore noted, evidence was established on the issue of the survival and identity of decedent's next of kin.

The instant case is, therefore, clearly distinguishable from the *North Pier Terminal Co. case,* even apart from a comparison of the respective omissions in the complaints, inasmuch as the sufficiency of the complaint in that case was challenged by appropriate motion in the trial court, and the plaintiff therein conceded that the omissions were fatal.

In the instant case, where the sufficiency of the complaint is challenged for the first time on appeal, either because defects are newly discovered, or because they were reserved for entrapping an unwary opponent, we are obliged to consider the applicability and effect of the common-law doctrine of "aider by verdict," of the provisions of section 42(3) of the Civil Practice Act, (Ill. Rev. Stat. 1951, chap. 110, par. 166(3),) and of section 6 of the Amendments and Jeofails Act. Ill. Rev. Stat. 1951, chap. 7, par. 6.

At common law the doctrine of "aider by verdict" was developed to estop parties who were content to try their cases on bad pleadings from insisting in the appellate tribunal, after they had the benefit of the jury's deliberation, that the pleadings were insufficient. Under this principle a verdict was deemed to cure not only all formal and purely technical defects in a complaint, but also any defect in failing to allege, or in alleging imperfectly, any substantial facts which are essential to a right of action, provided "the issue joined is such as necessarily requires, on the trial, proof of the facts so omitted or imperfectly stated and if such facts can be implied from the allegations of the complaint by fair and reasonable intendment." (*Sargent Co.* v. *Baublis*, 215 Ill. 428; *Lasko* v. *Meier*, 394 Ill. 71.) This doctrine of "aider by verdict" was qualified, however, by the rule that "If, with all intendments in its favor, a complaint wholly and absolutely fails to state any cause of action at all, objection can be made to it for the first time on appeal." However, if a cause of action is stated, no matter how defectively, and the complaint is not challenged below, then such defect is cured by the verdict. *Sargent Co.* v. *Baublis*, 215 Ill. 428.

In construing complaints containing defects and omissions, courts have held that the cause of action was merely stated defectively, rather than that no cause of action was stated at all; consequently, the doctrine of "aider by verdict" could be applied and the defects and omissions deemed cured by the verdict.

With reference to the nature of defects held to be cured, in *Sargent Co.* v. *Baublis* the complaint failed to state and merely inferred that a master-servant relationship existed, failed to allege the nature of the defective tool causing the injury, or aver notice of it by the master, nevertheless, the court held that the doctrine of "aider by verdict" applied, and the sufficiency of the complaint could not be attacked for the first time on appeal.

In *Lasko* v. *Meier,* the complaint failed to charge the negligence of the defendant servant, but only charged the negligence of his codefendant master who was dismissed from the case. The court held that the cause of action was merely defectively stated, and therefore could not be challenged for the first time on appeal. The court also cited, but did not discuss section 42(3) of the Civil Practice Act.

Section 42(3) provides: "All defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived." The provision was construed and applied for the first time in *Connett* v. *Winget,* 374 Ill. 531, (commented on in 19 Chicago Kent Law Rev. 189.) The complaint therein, which was challenged for the first time on appeal, alleged that plaintiff was a passenger in defendant's automobile, but did not contain an averment of wilful and wanton misconduct by defendant, which would have been essential to impose liability under the Guest Act. The court held, however, that there could be no inference that a "passenger" meant a "guest," hence the allegation of wilful and wanton misconduct was not essential, and the omission could not be raised for the first time on appeal. In sustaining the sufficiency of the defective complaint the court relied both upon the doctrine of "aider by verdict," citing *Sargent Co.* v. *Baublis,* and upon section 42(3). The court apparently took the position that section 42(3) was similar to and declaratory of the prior principle of "aider by verdict."

This section has been applied in other cases to preclude objections to pleadings for the first time on appeal. In *Carmack* v. *Great American Indemnity Co.* 400 Ill. 93, where the complaint did not specify the particular provision of the policy relied upon for recovery, the court held that the defect in the pleading was waived by virtue of section 42(3). In *Carson Payson Co.* v. *Terrazzo Co.* 288 Ill. App. 583, the court held that, conceding the complaint was defective in that there was no allegation that appellant was free from

contributory negligence, that defect was deemed waived under this section of the statute.

The extent to which section 42(3) has expanded the common-law concept of "aider by verdict," when applied to objections to pleadings interposed for the first time on appeal, has not been clearly established. There is an implication in *Owens-Illinois Glass Co.* v. *McKibbin,* 385 Ill. 245, that this section did modify the prior law in some respects. In that cause plaintiff failed to allege facts showing irreparable injury in a proceeding to enjoin the enforcement of a tax, nevertheless the court held that a good cause of action was merely defectively pleaded. Although the court confined its construction of section 42(3) to the facts before it, the court did reiterate the limitation applicable to the doctrine of aider by verdict, to the effect that if a defect in the pleading amounted to a failure to state a cause of action the insufficiency of the pleading could be raised at any time. The court stated: "While we do not go to the extent of holding that a pleading which wholly fails to state any cause of action may not be taken advantage of for the first time on appeal, we do think in this case that if the complaint was insufficient it was not in the substance of the matters charged, but only with respect to the particularity with which the facts are set out, and therefore clearly comes within the provisions of the Civil Practice Act, which to this extent modified what may have been a rule previous to its adoption."

It is apparent therefore, that although section 42(3) of the Civil Practice Act does not refer specifically to "defects in substance," nor state that if the defect amounts to a failure to state a cause of action it cannot be waived, nevertheless, this limitation has been engrafted upon section 42(3). A broader statement of the limitation appears in *Wagner* v. *Kepler,* 411 Ill. 368, where the court indicated that only where the complaint "fails to state or indicate any ground of liability which the law will recognize," can the

sufficiency of the complaint be raised for the first time on appeal. The court stated: "While defects in a complaint containing an incomplete or otherwise insufficient statement of a good cause of action may be waived, the question of whether a complaint absolutely fails to state or indicate any ground of liability which the law will recognize can be raised at any time." Thus, the court stresses the failure to indicate any ground of liability, rather than the failure to state a "cause of action," which phrase is fraught with restrictive implications, in determining whether the insufficiency of the complaint can be raised.

The courts have been constrained to construe this limitation in connection with section 42(3), inasmuch as the Civil Practice Act has been held not to dispense with the necessity of alleging ultimate facts necessary to constitute a cause of action or defense. (McCaskill, Jenner, Schaefer, Ill. Civil Practice Act, Anno., 67, 89; *Scott* v. *Freeport Motor Cas. Co.* 392 Ill. 332, 348.) Hence, it would appear that in determining whether the sufficiency of the complaint may be challenged for the first time on appeal, or whether the defects have been waived under section 42(3), the court must evaluate the seriousness of the omission or defect, and ascertain whether the complaint nevertheless states some grounds of liability recognized by the law.

It is not necessary for this court to adjudge whether section 42(3) was intended to permit the waiver of all defects in substance even where the complaint failed to state a cause of action, inasmuch as the complaint herein clearly states an established category of liability. As hereinbefore noted, the complaint predicates liability on the rights conferred under the Wrongful Death Act and asserts that plaintiff's intestate was drowned as a result of an attractive nuisance maintained on defendant's premises, thereby causing certain specified damages to plaintiff.

Inasmuch as the Wrongful Death Act confers the right of action for the benefit of the surviving "next of kin"

who have suffered pecuniary damages as a result of the death of the decedent, it is evident that good pleading would dictate that each of the next of kin should be named along with an allegation of their relationship to the deceased, and of their pecuniary injuries resulting from his death, so that the defendant may contest the pecuniary damages as any other fact at issue in the case. However, the chief importance of all such specific allegations is in connection with the question of the amount of damages, if any, to be assessed, and the only essential prerequisite to a statement of a cause of action, or basis for imposing liability, is an allegation of the survival of beneficiaries of the class who may recover under the statute. *Chapman* v. *Terminal Railroad Assn.* 137 S.W. 2d (Mo. App.) 612.

The phrase "next of kin" in the statute has been defined as "blood relatives" or a definite class of blood relatives or kinsmen in existence at the time of the death of the deceased who would take his personal property in case he died intestate. *Wilcox* v. *Bierd,* 330 Ill. 571.

Viewing the complaint with all inferences and intendments in its favor, as we are obliged to do after the verdict has been entered (*Lasko* v. *Meier,*) it would appear that the several references to decedent as "plaintiff's intestate," which is a non-technical phrase and could refer to a person from whom the plaintiff would inherit under the laws of intestacy, in addition to the facts that the decedent has the same last name as plaintiff, and is designated as a seven-year-old child, raise the inference that plaintiff was a "kinsman of the deceased who would take his personal property in case he died intestate." Hence the complaint may be construed to contain a sufficient averment of the survivorship of a beneficiary within the category of persons entitled to recover under the Wrongful Death Act. Under these circumstances the remarks of Justice Cardozo in *Wood* v. *Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214, seem appropriate: "* * * the law has outgrown its primitive state

of formalism, when the precise word was the sovereign talisman, and every slip was fatal. It takes a broad view today."

Moreover, there is no question but that defendant was adequately apprised of, and tacitly assumed, the existence of surviving next of kin of the class entitled to be benefited by the proceeding. As hereinbefore noted, in paragraph 4 of defendant's motion for judgment notwithstanding the verdict defendant referred to "those benefitting by the action," and in paragraph twelve defendant mentions the necessity of proof of due care on the part of "plaintiff" and the "brother of the decedent."

Furthermore, although by virtue of the historical development of the common law there is no doctrine of "aider by proof," nevertheless it may be noted that the evidence in the instant case established that the decedent was survived by his mother, Florence Gustafson, his father, Gust Gustafson, and his brother, Wayne, age twelve. In this connection it has been suggested by legal scholars (43 Ill. Law Rev. 61) that the Civil Practice Act be construed so that if the matter omitted from the pleading was proved at the trial, or the determinative issue actually tried, as in the instant case, the judgment should not be arrested or reversed.

Irrespective of this rationale, however, it is our opinion the complaint clearly informed defendant of the nature of the cause and of the basis on which liability was predicated, and contained both directly and by implication the essential elements specified for asserting a right of recovery under the Wrongful Death Act. Thus, since the omission in the complaint in no way prevented a trial of the essential issues in the case, and since no objections were taken to such defects and omission in the pleading in the trial court, they may be deemed to be cured by verdict under the doctrine of "aider by verdict," or waived by the parties under section 42(3) of the Civil Practice Act.

There is a further cogent reason why defendant's attack on the complaint for the first time in the reviewing court cannot be countenanced. Section 6 of the Amendments and Jeofails Act provides: "Judgments shall not be arrested or staid after verdict, nor shall any judgment upon verdict or finding by the court * * * be reversed, impaired, or in any way affected, by reason of any of the following imperfections, omissions, defects * * * in the process, pleadings, proceedings or records, namely: * * * Ninth— For the want of any allegation or averment on account of which omission a motion raising an objection to such omission in the pleading could have been maintained."

It is evident that the omission in the complaint of the names of all the next of kin and the pecuniary damages sustained by them could have been objected to by motion in the trial court, and the defect could have been cured by amendment under section 46 of the Civil Practice Act. (Ill Rev. Stat. 1951, chap. 110, par. 170.) In fact, even if the omission were deemed fatal to a statement of a cause of action, the complaint could still be amended provided the amendment arose out of the same transaction or occurrence, and such amendment would relate back to the date of the filing of the original complaint. *Metropolitan Trust Co.* v. *Bowman Dairy Co.* 369 Ill. 222; *Chapman* v. *Terminal Railroad Assn.* 137 S.W. 2d (Mo. App.) 612.

In the *Metropolitan Trust Co. case,* the court reconstrued the Wrongful Death Act in the light of the more recent amendments to section 46 of the Civil Practice Act, and specifically noted that the act evidenced the legislative intent to remedy the evils incident to the former legislation and to preserve causes of action against loss by reason of technical rules of pleading.

The *Bowman case* was cited and followed by the Missouri court which applied Illinois law in the *Chapman case,* where the original complaint omitted any reference to survivors of the decedent, and an amendment remedying that

defect was permitted to be filed after the expiration of the one-year period for filing wrongful death claims.

Inasmuch as the complaint herein could have been amended, and a motion raising an objection to the defect or omission in the pleading could have been maintained in the trial court, therefore, under section 6 of the Amendments and Jeofails Act, the judgment rendered on the verdict in the trial court may not be reversed because of an omission in the pleading.

On the basis of this analysis it is our judgment that it was error for the Appellate Court to reverse the judgment of the trial court on the ground that the complaint was insufficient.

Although the Appellate Court disposed of this cause solely on the ground of the insufficiency of plaintiff's pleading, defendant has interposed the additional argument on this appeal that even if plaintiff's complaint is deemed legally sufficient, nevertheless the cause should be reversed on the ground that the trial court erred in denying defendant's motion for judgment notwithstanding the verdict, inasmuch as the evidence does not establish that defendant maintained an attractive nuisance.

In determining the propriety of the trial court's denial of defendant's motion, it is incumbent upon this court to view the evidence and all the legitimate inferences therefrom in the aspect most favorable to plaintiff, and then to ascertain whether there is any evidence in support of the allegations with reference to the attractive nuisance.

The complaint alleges that defendant negligently permitted a body of water to accumulate on its premises, which were located within a closely built-up section of the city, and that this watercourse, which was open and unguarded, contained large floating objects which were attractive to children, and were visible from a place where the deceased, a child of tender years, had a legal right to be.

Although it is settled that an open body of water on private property is not in itself an attractive nuisance, (*Mindeman* v. *Sanitary Dist.* 317 Ill. 529; *Peers* v. *Pierre,* 336 Ill. App. 134,) nevertheless, where the water contained unusual attractive elements such as a floating log (*Mc-Mahon* v. *City of Pekin,* 154 Ill. 141,) or a thick scum which appeared like a path, (*Cicero State Bank* v. *Dolese & Shepard Co.* 298 Ill. App. 290,) or a boardwalk above the water (*Howard* v. *City of Rockford,* 270 Ill. App. 155,) the courts have held that the watercourse constituted an attractive nuisance. Therefore, the allegations of plaintiff's complaint, which include a reference to large objects, attractive to children, floating in the unguarded watercourse, which was located in a built-up portion of the city, contained the elements essential to establish an attractive nuisance.

With reference to the evidence in support of these allegations there is testimony that the unguarded accumulation of water, to a depth of some fifteen feet in some areas, was located within a populated area of the city, and was clearly visible from the backyard of one of the children with whom the deceased child customarily played. The exhibits as well as the testimony reveal numerous objects, including tree stumps, bottles, and a five-gallon drum partially frozen in the watercourse. There is further testimony that children had been sliding on the wet and partly melted ice two days before the accident, and that shortly before that date a child who had been sliding on the ice fell into water up to her waist. The evidence is conflicting as to whether the ice was entirely frozen, but it is uncontroverted that it was not frozen at the point where the deceased child fell through. (Nor is it controverted that this unguarded watercourse was completely filled in two months after the accident, although that project was deemed too expensive when contemplated prior to the accident.) Furthermore, one of

defendant's officials admitted having chased children off the property several times. On this issue the defendant relies upon these cases: *Mindeman* v. *Sanitary Dist.* 317 Ill. 529, *Wood* v. *Consumer's Co.* 334 Ill. App. 530, and *Peers* v. *Pierre*, 336 Ill. App. 134. In the *Mindeman case*, a five-year-old child was drowned in a sanitary district canal, which was an ordinary body of water, not visible from the street, and could not be reached without crossing some 300 feet of private property. Consequently it was held that this watercourse did not constitute an attractive nuisance. However, the court expressly reserved deciding whether liability would have been imposed if the child had drowned at the unfinished end of the canal where there was a pool containing floating bottles and boards, as in the instant case, inasmuch as there was no evidence therein that the decedent was in that area.

In *Peers* v. *Pierre*, the Appellate Court reviewed the doctrine of attractive nuisance as applied to watercourses, and held that the pond did not constitute an attractive nuisance since there was no element of allurement in the water, and that the debris consisting of some small sticks did not alter the case. Those objects are not to be compared with the floating and partially frozen five-gallon drum, the tree stumps and the bottles which were visible in the watercourse in the instant case.

In *Wood* v. *Consumer's Co.*, the deceased, a child of seven, fell into an unguarded artificial pond resulting from the excavation of gravel on defendant's property located outside the city limits and some considerable distance from the child's home. The pond was described as an ordinary body of water without any alluring contents, and there was no evidence that it could be seen from any public place or where the child had a right to be. In denying that the watercourse constituted an attractive nuisance under those circumstances, the court distinguished *Howard* v. *City of Rockford*, on the ground that the watercourse therein was

surrounded by dwelling houses, was in no way guarded or fenced, and that defendant's office knew that small children went on the property. As hereinbefore noted, these distinguishing factors are also present in the instant case, hence it clearly appears that the situation before us is distinguishable from those appearing in the cited cases. Consequently the verdict of the jury imposing liability upon defendant was supported by evidence, and the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict. Therefore, the judgment of the Appellate Court, reversing the judgment of the circuit court of Rock Island County, was in error, and should properly be reversed, and the judgment of the circuit court is affirmed.

*Appellate Court reversed; circuit court affirmed.*