Helen Zorn, Administrator of the Estate of Craig Zorn, Deceased, Plaintiff-Appellee, v. Elsa L. Bellrose and Vernon K. Bellrose, Defendants-Appellants.

Gen. No. 11,280.

Second District, First Division.

August 31, 1959.

Released for publication September 17, 1959.

James L. Waring, of Ottawa, for defendants-appellants.

Perona and Perona, of Spring Valley, for plaintiff-appellee.

JUSTICE McNEAL delivered the opinion of the court.

This is an action to recover damages for the wrongful death of plaintiff's intestate, Craig Zorn. The case was tried by a jury, which returned a verdict in favor of the plaintiff in the amount of $10,000. Judgment was entered upon the verdict. The court denied defendants' post-trial motion, and they appealed. Defendants contend that the evidence fails to show that they were guilty of any negligence, and that the court erred in admitting evidence and in giving an instruction for the plaintiff. In order to determine whether there was any evidence that defendants were negligent, it is necessary to examine the facts in the case.

Defendants owned a residential property in Ottawa, Illinois. Their property was bounded on the south by Chapel Street, on the east by Chester Street, and on the north by the Fox River. The Fox River was about 20 feet below the level of the defendants' property, and there was a steep embankment along the north edge of the property.. Steps extended down this embankment to a pump house located about half way

down, and then the steps continued on down to the river. There was no sidewalk or path leading to the head of the steps.

Defendants' property was improved with a large residence and there was a garage located on the east side of their lot. An iron fence made of three horizontal iron pipes and iron posts, extended from the north side of the garage to the northeast corner of the property, then the fence extended westerly across the north end of the lot. The only break in the fence was at the head of the steps extending down to the pump house, and two steel chains were fastened between the iron posts at the head of the steps. A hand rail extended down the steps to a platform upon which the pump house was located, and the platform was inclosed by an iron fence similar to the one extending across the top of the embankment. The top of the steps extending from the pump house platform to the river's edge was barred by two chains similar to the chains across the steps at the top of the embankment. A hand rail extended part way down the steps, which extended from the pump house platform to the edge of the river.

On June 4, 1955, Craig Zorn, aged six, and his cousin, Jeff Radtke, aged seven, rode their bicycles from Craig's home for a distance of about two blocks over to the property owned by the defendants. Although there is evidence that other children had played along the north edge of defendants' property on previous occasions, the evidence indicates that Craig and Jeff had never been on defendants' property on any prior occasion.

The evidence indicates that the two boys left their bicycles in the street, went to the north edge of the garage, crawled through the fence along the east side of defendants' property, and entered defendants' back yard. Then they crawled through the fence along the north side of the property at a point east of the

333

head of the steps. They then climbed down the rocky embankment to the pump house and crawled through the fence around the pump house platform and entered upon the platform. They then went to the head of the flight of steps extending from the platform to the edge of the river and crawled between the two chains at the head of those steps. They went part way down the steps and began throwing sticks and rocks into the river. There was some evidence that the steps may have been wet, either from rain or seepage. While the boys were thus engaged in throwing various objects into the river, Craig Zorn slipped on the steps, fell into the river, and was drowned.

The parties have called to our attention a number of decisions in this state dealing with the attractive nuisance doctrine. The facts involved in the following cases were held to justify a finding of liability: Gustafson v. Consumers Sales Agency, Inc., 414 Ill. 235; City of Pekin v. McMahon, 154 Ill. 141; City Nat. Bank of Kankakee v. City of Kankakee, 15 Ill.App.2d 458; Kleren v. Bowman, 15 Ill.App.2d 148; Cicero State Bank v. Dolese & Shepard Co., 298 Ill. App. 290; and Howard v. City of Rockford, 270 Ill. App. 155. And the facts involved in the following cases were held not to justify a finding of liability: Burns v. Chicago, 338 Ill. 89; Minderman v. Sanitary Dist. of Chicago, 317 Ill. 529; Adams v. Brookwood Country Club, 16 Ill.App.2d 263; Ellison v. Commonwealth Edison Co., 351 Ill. App. 58; Peers v. Pierre, 336 Ill. App. 134; Wood v. Consumers Co., 334 Ill. App. 530; Baker v. Fruin-Colnon Contracting Co., 271 Ill. App. 300; and Kelley v. First Bank & Trust Co., 256 Ill. App. 439. A thorough annotation on the subject appears in 8 A.L.R.2d 1254 et seq. This annotation lists the various factors which the courts in this country have considered, namely, whether the watercourse is natural or artificial, whether there is anything unusual about

334

it, whether the child was attracted by the water and whether the landowner was negligent.

■ The latest pronouncement by our Supreme Court on the attractive nuisance doctrine appears in Kahn v. James Burton Co., 5 Ill.2d 614, which sustained recovery for a child who was injured when improperly stacked lumber fell upon him. The Supreme Court discussed the cases dealing with watercourses and pointed out that attempts to pigeonhole the various cases often led to undesirable and irreconcilable conclusions. The Court concluded that the only proper basis for decision in such cases is the customary rules used in ordinary negligence cases. In other words, the question in each case is whether the landowner has or has not been negligent under all of the facts and circumstances in evidence.

Turning to the case now before this Court, we must determine whether there is any evidence in the record that the defendants were negligent, or whether there is any evidence in the record giving rise to any reasonable inference that the defendants were negligent, that is, that they failed to act as reasonable persons under the facts and circumstances in evidence.

It is true that defendants owned property along a river, that there was a steep bank along the river, and that defendants maintained steps running down to the river. No cases have been cited indicating that landowners are under an absolute duty to patrol or fence in natural watercourses. Nevertheless the defendants in this case did undertake the precaution of maintaining a substantial iron fence along the full length of the embankment. Furthermore they maintained a second substantial fence around the pump house and half way down the embankment. They protected the head of the steps with two steel chains, and they had a second set of chains half way down the steps. It appears to us that the defendants in this

335

case exercised more care than the ordinary prudent person would have exercised under all of the facts and circumstances shown by the evidence. The decedent went through the iron fences at three different places and through one set of chains before he approached the river.

It is suggested that the chains and the fence constituted an undue attraction to young children, but we are unwilling to ascribe to the argument that the very means used to deter persons from approaching the river constituted an attractive nuisance. It is also suggested that the fence was improperly constructed because boys could crawl through it, but we are inclined to agree with the Supreme Court of Wisconsin that it would take "the inventive genius of an Edison" to construct a boy-proof fence. (Emond v. Kimberly-Clarke Co., 159 Wis. 83, 88.)

A careful consideration of all of the evidence in this case compels the conclusion that legal responsibility for the tragedy which befell Craig Zorn should not be fastened upon the defendants. Holding defendants in this case liable would be tantamount to affixing liability without fault. We are unable to find any evidence in the record that the defendants were negligent, or which would justify any reasonable inference that the defendants were negligent; and consequently it is our duty to reverse the judgment entered by the trial court. In view of this finding it is not necessary for us to determine the questions raised with reference to the admission of evidence and to plaintiff's instruction. The judgment of the Circuit Court of LaSalle County is reversed.

Judgment reversed.

SPIVEY, P. J. and DOVE, J., concur.