MATTHEW JAMES CORCORAN, a Minor, *et al.*, Plaintiffs-Appellants, *v.* THE TOWNSHIP OF LIBERTYVILLE *et al.*, Defendants-Appellees.—MATTHEW JAMES CORCORAN, a Minor, *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF LIBERTYVILLE, Defendant-Appellant.

Second District   Nos. 76-23, 76-155 cons.

Opinion filed May 31, 1977.—Rehearing denied July 22, 1977.

Edward A. Puisis, Robert L. Snook, and Ned L. Fisher, all of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, and Overholser, Ray, Flannery & Glick, of Libertyville, for appellant Village of Libertyville.

Victor J. Piekarski and James J. O'Hagan, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, and Leo J. Sullivan, III, of Sullivan, Smith & Hauser, Ltd., of Waukegan, for appellants-appellees Matthew James Corcoran.

Judge & Schirott, of Park Ridge, for appellee Township of Libertyville.

Robert M. Bollman, Louis Brydges, and David R. Quade, all of Diver, Brydges, Bollman, Grach & Riseborough, of Waukegan, for appellee County of Lake.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiffs appeal from the order of the trial court dismissing their second amended complaint against the Township of Libertyville and the County of Lake. The defendant, Village of Libertyville, appeals from the trial court's order denying its motion to dismiss the plaintiffs' third amended complaint against the village only. The cases were consolidated for purposes of this appeal.

The action is one for personal injury brought by the parents of a two-year-old child for injuries the child suffered when he fell into a drainage ditch near his home. He was rescued but suffered permanent brain damage before he could be revived. The parents of the injured child, Jerry James Corcoran and Linda Corcoran, are also suing in their own behalf for emotional distress caused to them by the hopeless condition of their child.

The second amended complaint named the Village of Libertyville, the Township of Libertyville and the County of Lake as defendants, alleging that the ditch in question was owned by the Village of Libertyville (allegedly being within the municipal boundaries) and was maintained by the county and the township. The complaint was in four counts, count I

being based on negligence, count II on willful and wanton conduct and count III being couched in language intended to bring it within the doctrine of the case of *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, which modified somewhat the requirements of the attractive nuisance doctrine. Count IV alleged injury to the parents of the injured child through emotional distress caused to them by the permanent damage incurred by their child. Neither parent was present when the child fell into the ditch. The father discovered him completely immersed in the water of the ditch about 100 yards from their home.

The defendants all filed motions to dismiss the second amended complaint on the ground it failed to state a cause of action against them. The county and the township asserted they had no control over or possession of the ditch, hence owed no duty to the plaintiffs; that the willful and wanton language of count II was mere rhetoric, without factual foundation and that in any event they were immune to the action brought by the plaintiffs under the Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85), notwithstanding that they were partially insured against liability. They also contended the action for emotional distress was not cognizable under Illinois law under the limited theory of recovery in such cases.

The trial court, after considering the arguments and briefs of counsel, granted the motion of Lake County and Libertyville Township to dismiss the second amended complaint as to them. As to the Village of Libertyville, the court denied its motion to dismiss and allowed the plaintiffs to file a third amended complaint. The third amended complaint was prepared under the restrictive order of the trial court, striking count II (willful and wanton conduct) and count IV (for emotional distress of the parents), of the second amended complaint. The third amended complaint, directed to the Village of Libertyville only, contains only two counts. Count I is couched in terms of ordinary negligence, alleging a duty toward the child through ownership and control of the land through which the ditch ran, and a breach of duty by the following negligent acts of the defendant, which for the purposes of this decision we set out here in full:

> "(a) Negligently and carelessly maintaining this ditch so that it would not properly drain off the water;
> (b) Negligently and carelessly allowing this ditch to become dangerous by its irregular bank, by the slope of said bank, by the rubbish, including boards, trees and refuse scattered on the bank, approaches of the ditch and the ditch itself;
> (c) Negligently and carelessly permitting the filling in of part of said ditch, which increased the hazards in the remaining portion of the ditch;
> (d) Negligently and carelessly failing to make safe for those

persons lawfully on said property an artificial, dangerous condition existing on their land;

(e) Negligently and carelessly failing to warn the plaintiff of the dangers of said unnatural conditions existing on their land;

(f) Negligently and carelessly allowing the bed of said ditch to become irregular and pocketed which allowed water to collect and remain in said ditch;

(g) Negligently and carelessly failing to inspect said ditch and the approaches thereto thereby permitting it to remain in an unnatural and dangerous condition."

Count II of the third amended complaint invokes the doctrine of attractive nuisance by incorporating therein several paragraphs regarding a dangerous condition of foreseeable harm to children therefrom, that children were known to frequent the area, that the child in question was of tender years, and that the expense of guarding against harm to children playing in the area was slight in comparison to the harm they were exposed to. The details which exemplified the dangerous condition were merely summed up in one paragraph, stating them as: "a deceptively steep, unguarded and dangerous slope, which was eroded and caved in; an irregular embankment littered with debris and rubbish; an unnaturally pocketed bed, which unnaturally caused water to accumulate in the ditch at various depths; an unreasonable and excessive accumulation of rubbish and debris in the ditch itself and about the approaches thereto."

In denying the village's motions to dismiss the third amended complaint, the trial court certified the following questions for an interlocutory appeal:

"1. Whether under the allegations of the plaintiff's Third amended Complaint as amended, a cause of action has been stated under either Count I or Count II,

2. Whether the Defendant, VILLAGE OF LIBERTYVILLE, cannot be liable under Section 2—105, 2—201, 2—109, 2—110, 2—207, and 3—101 of Tort Immunity Act and for exercise of discretion under common law concept of public official immunity.

3. Whether Sections 2—105, 2—201, 2—109, 2—110, 2—207 and 3—101 of the Tort Immunity Act are not waived by the possession of liability insurance."

If the first question as certified by the trial court is answered by this court in the negative, the questions under the Tort Immunity Act would not be reached, therefore that question must be considered first. In the third amended complaint the plaintiffs have dropped their previous specific ground of negligence in failing to fence off the ditch and merely allege that the defendant was negligent in failing to keep the ditch and the banks in safe condition and allow debris and obstructions to create

pockets of water. On these general allegations we must determine, with the aid of previous decisions in like cases, whether the complaint states a cause of action.

It will be noted that the trial court apparently distinguished between the legal position of the county and the township, on one hand, and the village on the other, since he denied the village's motion to dismiss the second amended complaint for failure to state a cause of action, while dismissing the second amended complaint as to the township and the county. Since the plaintiffs appeal the trial court's ruling dismissing the second amended complaint as to the township and county, it appears we must rule on the sufficiency of counts II and IV of the second amended complaint, as well as the sufficiency of counts I and III thereof, and the sufficiency of the counts of the third amended complaint (against the Village of Libertyville).

The basis of the trial court's distinction between the legal position of the village and that of the other two defendants is founded, we assume, on the fact that the village is alleged to be the owner of the land, whereas the township and county are only alleged to have managed or maintained the ditch. Without ownership or possession, the county and township could not actually control the ditch, whereas the ownership alleged to reside in the village would give it responsibility for control. Thus, the village might be thought to be more susceptible to either an action for common law negligence or under the exceptional form of negligence founded on the attractive nuisance doctrine, than would be the other two defendants.

■■ In order not to unduly prolong this opinion, we think it is appropriate to say at this point that we find no merit whatsoever in the willful and wanton count of the second amended complaint, it being merely words without substance. We are also in agreement with the trial court's ruling as to count IV of the second amended complaint—for emotional distress of the parents of the unfortunate child. Our review of the law in its present state in Illinois leads us to conclude that the facts alleged here do not come within the limited application of the theory of tort liability for emotional distress in this State. The conduct was neither intentional nor outrageous—at the most it falls far short of the requirements for such an action. (See *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85.) Thus, a decision as to the sufficiency of the third amended complaint will also serve to determine the correctness of the trial court's ruling on the remaining issues of the second amended complaint, as to which the plaintiffs are appealing.

■■ As noted above, the trial court distinguished between the legal position of the three defendants in denying the motion of the village to strike the second amended complaint as to it. If the rationale of this decision is related to the allegation that the village was the owner of the

land, the distinction apparently relates back to the attractive nuisance doctrine, which has traditionally been a doctrine asserted against the person owning or controlling the land on which the attractive nuisance is located and has been determined without regard as to whether the injured child was a trespasser or an invitee. Historically, however, the attractive nuisance doctrine has not been applied to bodies of water, without some other allurement being involved and the plaintiffs in this case, recognizing the difficulty of fastening liability on the defendant for a drowning in a public body of water, have invoked the case of *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614. In that case the defendant lumber company deposited a load of lumber on a lot on which a contractor was erecting a house. Children frequently played in the vicinity of the lot in question. The lumber was not stacked safely and solidly and when some children coming by shortly after it was deposited on the lot began to play on the lumber, the pile of lumber collapsed, injuring the plaintiff, an 11-year-old boy. The case was tried in the trial court on the theory of attractive nuisance and the plaintiff recovered judgment. On appeal, the appellate court reversed, holding that the lumber company had no duty toward the plaintiff, under ordinary rules of negligence, and the exception as to the injury to children inherent in the attractive nuisance doctrine did not apply because the lumber people did not either own or control the premises in question, and, in any event, a pile of lumber was not an attractive nuisance.

Upon appeal the Illinois Supreme Court reversed, saying at page 621:

"In the case at bar the questions whether the lumber was so piled as to create an unreasonable danger to children playing thereon, and whether it was so attractive to children as to suggest the probability that children would climb onto it, were questions for the jury under the circumstances shown in the record." (5 Ill. 2d 614, 621.)

In the course of the opinion the court commented on the doctrine of attractive nuisance in the following language:

"The naming or labeling of a certain set of facts as being an 'attractive nuisance' case or a 'turntable' case has often led to undesirable conclusions. The inclination is then to find a *stare decisis* pigeonhole or category. The difficulty in such procedure is that too often the result of such a search is the reaching of irreconcilable conclusions. In certain cases referred to as 'attractive nuisance' cases the courts point out that the infant, because of his immature judgment and inability to appreciate certain conditions, was attracted and allured to certain premises and therefore is no longer a trespasser but is to be regarded as an invitee. It follows then that certain duties are owed to him. However, we then find

the same courts declaring that this same immature child was attracted to the premises by object A but was injured by object B, and can therefore find no remedy at law for the reason that his injury was not proximately occasioned by the attracting cause." 5 Ill. 2d 614, 624.

The court then went on to say that "the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases." (5 Ill. 2d 614, 624.) This language is cited by the plaintiffs here as indicating that the doctrine of attractive nuisance has been abandoned in Illinois (and therefore the universal rejection of the doctrine as applying to watercourses need not be considered). Actually, the above cited language was followed a page or two later in the opinion by language clearly indicating that the exception in favor of young, trespassing or uninvited children who were injured by a "dangerous agency" (not much different from an attractive nuisance), was still viable, when the court said:

"It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children." 5 Ill. 2d 614, 625.

It can be fairly said, therefore, that the *Kahn* case diminished the importance of the particular allurement or attracting agency as being the touchstone of liability and retained only the remaining element of knowledge that children were likely to frequent the place and that a dangerous agent or instrumentality was present at such place which was under the control or direction of the defendant. This, we conclude, is the rationale of the *Wagner* case (*Wagner v. Kepler* (1952), 411 Ill. 368) and is in keeping with section 339 of the Restatement of Torts (1934). Therefore, it might be said to represent the present state of the law in Illinois on this subject.

However, while accepting the lessening of the *attraction* part of the attractive nuisance doctrine so that it is no longer necessary to rationalize a trespass into an invitation by reason of the allurement of a particular attracting object or objects, the appellate courts do not seem to have entirely abandoned the attractive nuisance doctrine. See, for example, the decision of this court in the post-*Kahn* case of *City National Bank v. City of Kankakee* (1957), 15 Ill. App. 2d 458 (abstract). There, a six-year-old boy drowned in a quarry which was used as a dump. The quarry was on the way between home and school. The court held the defendant—City

of Kankakee—liable on the basis of the attractive nuisance doctrine. While recognizing that the weight of the authority was to the effect that a body of water is not an attractive nuisance in and of itself (citing *Mindeman v. Sanitary District* (1925), 317 Ill. 529 and *Gustafson v. Consumers Sales Agency* (1953), 414 Ill. 235), the court found that the quarry was more than a quarry—it was a dump. The water contained "many foreign objects which injected additional elements of allurement. The attraction was the whole of the premises, of which the watercourse constituted an attractive and fatal part." This case was, therefore, not strictly a watercourse case but rather an attractive nuisance case, where the child was attracted to the premises by something other than the water in which he drowned.

In view of the balancing which must be done in cases involving injury to children in order to protect them without transgressing too heavily on the rights of property owners in the everyday use of their property, it is not surprising that the post-*Kahn* cases show a split in the decisions. The technicalities of the attractive nuisance doctrine have been avoided by using the broader base of the *Kahn* case where the court felt there were acts or omissions of culpable negligence, whereas in other cases the traditional limits of the attractive nuisance doctrine were invoked in order to avoid stretching the responsibility of property owners beyond what was thought just or practicable.

Considering here only cases involving watercourses, six appellate court cases since *Kahn* show an even split, three rejecting liability and three recognizing liability. *Adams v. Brookwood Country Club* (1958), 16 Ill. App. 2d 263, involved the drowning of a nine-year-old boy in Salt Creek where it ran through the premises of a private country club. This court held there was no liability. While recognizing the *Kahn* case as modifying the pre-*Kahn* concept of attractive nuisance, it rejected its application in the *Brookwood* case, saying:

> "In the Kahn opinion the court referred to cases dealing with watercourses, ponds and lakes, but we do not believe that the court intended to overrule its earlier decisions that liability cannot be predicated upon a body of water where there is no unusual danger. In that opinion the court considered the fact that the expense of remedying the dangerous condition involved in the lumber pile was slight compared to the risk to children. To require riparian owners along all the rivers and creeks flowing in and adjacent to Illinois to construct boy-proof fences or to employ guards to protect children and restrain them from coming upon their lands adjacent to such streams would impose upon such owners no slight expense, but a most oppressive and unbearable burden." 16 Ill. App. 2d 263, 272-73.

In *Zorn v. Bellrose* (1959), 22 Ill. App. 2d 331, and in *Geiger v. Fisher* (1968), 104 Ill. App. 2d 6, both of which involved a death by drowning of a young boy in the Fox River, the appellate court held likewise. In the *Geiger* case, the Third Appellate Court District court said, after citing the *Brookwood County Club* case, and other cases:

> "The rationale of the foregoing decisions, we believe, requires us to hold that Count I has not alleged the existence of a 'dangerous agency,' as that phrase is contemplated in Kahn, and that defendants, by failing to erect a fence or barricade, violated no duty owed to plaintiff's decedent. It follows that the trial court was correct in dismissing Count I of the complaint." 104 Ill. App. 2d 6, 11.

On the other hand, several post-*Kahn* cases have recognized liability in injuries involving a body of water. We have already referred to *City National Bank v. City of Kankakee* (1957), 15 Ill. App. 2d 458 (abstract).

The two cases of *Skaggs v. Junis* (1960), 27 Ill. App. 2d 251, and *Hendricks v. Peabody Coal Co.* (1969), 115 Ill. App. 2d 35, are very much alike. In each case a 16-year-old boy was paralyzed from the effect of striking his head on a submerged object—in one case a stump, and in the other, a submerged sand ledge. In both cases the body of water was one where the public was allowed, if not invited, to swim, and the court felt there was a duty to either prevent access or to at least warn of hidden dangers to swimmers. It will be noted that in both the *Skaggs'* and the *Hendricks'* cases the injury was not by drowning but was caused by a hidden object in the water. Thus, the water itself was not the dangerous agency and was not held in either case to be an attractive nuisance. In fact, we see no reason in those cases why the minority of the injured parties—16 years of age—had any particular bearing on the case. It would appear that the reasoning of the court would apply equally to a young man of 21. Moreover, in neither case would the cost of fencing off the body of water have been prohibitive if the property owner had wished to deny access to swimmers.

■■ In view of the split in the decisions indicated by these cases and the natural sympathy of the trial court toward the plaintiffs in the case before us, we can understand why the trial court hesitated to cut the plaintiffs off from presenting their case on the merits. On the other hand, however, it must be recognized that if the facts alleged do not constitute a cause of action as a matter of law it would be unjust and improper to submit the tragic facts of the case to the judgment of a jury and lay upon the jury a burden of decisions not properly theirs.

The briefs quite naturally disagree as to whether the doctrine of attractive nuisance is applicable to this case or indeed is any longer viable in Illinois. We are inclined to think that the supreme court did not intend

to entirely abandon a doctrine which evolved over a long period of time for the protection of minors against the stringent requirements of common law negligence. The *Kankakee* case, for example, which was cited by the plaintiffs, rested squarely on the attractive nuisance doctrine and that was clearly the basis on which the decision rested.

Conceding, however, that the plaintiffs in this case are not obliged to meet the technical requirements of attractive nuisance as to the ownership and control of the land and the duty owed which comes from "attracting" a child to the fatal spot, nevertheless, the plaintiffs do have to prove a case of negligence deriving from the well pleaded allegations of the complaint. Putting the case squarely on the basis of negligence we do not believe the plaintiffs have a case. We note that in their third amended complaint—directed only against the Village of Libertyville—the plaintiffs have dropped their allegation of a failure to fence the ditch as a ground of negligence, retaining only the general allegation of failure to make the premises "safe for those persons lawfully on said property an artificial, dangerous condition existing on their [defendants'] land." Since, however, the dismissal of the second amended complaint directed at the township and the county is also appealed from and that complaint did contain an allegation as to the duty to fence, we feel our comment on that point is in order.

■■ Whatever may be the status of the attractive nuisance doctrine or its relevancy to this case, the law does not impose on a landowner the duty of fencing all bodies of water which are located on or run through his property. (*Mindeman v. Sanitary District* (1925), 317 Ill. 529; *Gustafson v. Consumers Sales Agency* (1953), 414 Ill. 235; *Adams v. Brookwood Country Club* (1958), 16 Ill. App. 2d 263.) And the cases generally give consideration to the practicability and expense of fencing or guarding the source of danger. (Annot., 8 A.L.R. 2d 11 (1949), and Restatement of Torts §339(b) (1934).) In the case before us it was impracticable and prohibitively expensive to have erected and maintained a child-proof fence along the entire length of the ditch even if the Village had had the right to do so.

■■ The failure to fence was, therefore, not in and of itself negligent conduct and since the doctrine of attractive nuisance as we have seen does not apply to an ordinary watercourse it would appear that the plaintiffs must allege the maintenance of an unusual and dangerous condition with regard to the ditch, together with the reasonable foreseeability of the village that children would be endangered by the existence of such unusual and dangerous conditions. Otherwise, there is nothing for the law of negligence to operate on, even under the broad standards of the *Kahn* case. In our opinion the allegations of the complaint—either the second or the third amended complaint—do not

allege an unusual and dangerous condition which the defendants were negligent in allowing to exist. Laying aside the failure to fence the ditch, which is not even alleged in the third amended complaint—the allegations describing the dangerous conditions of the ditch are a steep slope, an irregular embankment, an "unnaturally pocketed bed," causing the water to accumulate, and an unreasonable and excessive accumulation of rubbish and debris in the ditch itself and about the approaches thereto. The second amended complaint, in addition, contains as a basis of negligence, a couple of general averments as to the "artificial, dangerous condition existing on their [defendants'] land" and their being "otherwise careless and negligent in breaching its duty toward the plaintiffs." But these may be disregarded as being mere conclusions of law. Also, we must disregard the self-serving allegation as to "failing to warn the plaintiffs as to the dangers of said unnatural condition existing on their land." That the parents of the unfortunate child were misled by not being warned of the danger the ditch presented to an unattended two-year-old child is manifestly untrue.

We are left then with the allegation as to the steepness and irregularity of the banks of the ditch, that the water was not evenly distributed within the ditch, and that there was an accumulation of debris in and around the ditch. These allegations are the foundation of the plaintiffs' case founded on ordinary negligence and they are simply not sufficient to sustain their case. The child was found submerged in the water of the ditch and there is no allegation that he was injured by any dangerous instrumentality other than the water itself—there is no allegation of skull fracture or other physical injury not related to drowning. The nub of the case is, therefore, that the child accidentally fell into a drainage ditch and drowned while unattended.

We do not see that the drainage ditch in question, even if we accept the plaintiffs' description of it, was so different from the usual, ordinary drainage ditch as to require an exception to the ordinary rules of negligence under the attractive nuisance doctrine, even as modified by the *Kahn* case. The sloping, irregular sides of the ditch, the different depths of water, the accumulation of debris in the water and along the approaches to the ditch, seem to be ordinary and expected characteristics of a drainage ditch. We see no particular allurement in these allegations nor do they transform an ordinary drainage ditch into a "dangerous agency" as that phrase is used in *Kahn*.

■■ While conscious of the inexpressable tragedy which has befallen the plaintiffs in this case we are nevertheless constrained to answer the first question certified by the trial court in the negative. In view of that decision, the dismissal of the second amended complaint as to the county

and the township is likewise affirmed. Likewise, we find no need to discuss the questions raised as to the defendant's liability under the sections of the Tort Immunity Act certified by the trial court.

The judgment of the circuit court of Lake County is affirmed as to the County of Lake and the Township of Libertyville and reversed as to the Village of Libertyville.

Affirmed in part; reversed in part.

SEIDENFELD and BOYLE, JJ., concur.